UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) Case No. ) |
| -vs- | ) ) ) |
| SUMMIT CONTRACTORS, INC.; and CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, AMERISURE MUTUAL INSURANCE COMPANY (herein "Amerisure" or "Plaintiff"), by and through undersigned counsel, and files its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, against Defendants, SUMMIT CONTRACTORS, INC., (herein "Summit" or "insured"), and CRUM & FORSTER SPECIALTY INSURANCE COMPANY (herein "Crum & Forster"), and in support thereof states as follows:

I.  **NATURE OF ACTION AND RELIEF SOUGHT**

1. This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

2. Plaintiff seeks a declaration that it owes no duty to defend or indemnify Summit under an umbrella liability policy of insurance in connection with two underlying lawsuits styled: (1) <u>Oxford Place At Tampa Palms Condominium, Association, Inc. v. Tampa Palms Tarragon, LLC, et al.</u>, Case No. 10-CA-009364, which is currently pending in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida (herein "Oxford lawsuit"); and (2) <u>The Bordeaux Condominium Association v. Summit Contractors, Inc. and</u>

1

Lake Lotta Apartment, LLC, Case No. 09-CA-27435, which is currently pending in the Circuit Court of the 9th Judicial Circuit in and for Orange County, Florida (herein "Bordeaux lawsuit") (herein collectively the "underlying lawsuits"), until such time as all other available primary insurance is exhausted. As Summit currently has other primary liability insurance available to it through Defendant Crum & Forster, which is unexhausted and responsive to the underlying lawsuits, Amerisure owes no current duties or obligations to Summit under its umbrella policy.

3. There is clearly an actual, present and bona fide controversy between the parties with respect to Amerisure's coverage obligations to defend and/or indemnify Summit as a defendant in the underlying lawsuits for potential liability to the plaintiffs in the underlying lawsuits.

4. Amerisure's rights and duties pursuant to the policy are dependent upon this Court's interpretation of the policy's terms, conditions, limitations, provisions, exclusions and endorsements.

5. The adverse parties are all before the court by proper process.

II. **PARTIES**

6. At the time of the commencement of this action, Amerisure was an insurance company organized and existing under the laws of the State of Michigan. At the time of filing this action, Amerisure's principal place of business was Farmington Hills, Michigan.

7. At the time of the commencement of this action, Defendant Summit was a for-profit corporation, organized under the laws of the State of Florida, whose principal place of business was located in Jacksonville, Florida.

8. Upon information and belief, at the time of the commencement of this action, Defendant Crum & Forster Specialty Insurance Company (herein "Crum & Forster") was a corporation organized under the laws of the State of Delaware and with its principal place of business in Morristown, New Jersey.

9. Defendant Crum & Forster, who has been joined because it also provided Commercial General Liability (herein "CGL") coverage to Summit under the following policies: GLO 090899 (effective from 9/20/05 to 9/20/06); GLO 091290 (effective 9/20/06 to 9/20/07); GLO 101450 (effective 9/20/07 to 9/20/08); and GLO 131243 (effective from 9/20/08 to 9/20/09) (herein "Crum & Forster CGL policies"); and thus, should be included in, and bound by, any resulting judgment in this matter. Should Crum & Forster stipulate to be bound by the declaration of rights entered in this matter, Amerisure will consider dismissing it from this matter.

## III.   JURIDICTION AND VENUE

10. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c).

## IV.   BACKGROUND

### A.   The Amerisure Policies

#### 1.   Amerisure Primary Policy No. GL 2005207030004

12. Amerisure issued policy number GL 2005207030004 to Summit, which includes a Commercial General Liability coverage part and was effective from December 31, 2004 to

September 20, 2005 (herein "Amerisure Primary Policy").[1] A true and correct copy of the Amerisure Primary Policy is attached as **Exhibit A.**

13. The applicable aggregate limit of this policy has been exhausted by payments on behalf of and resolution of other Summit claims. Summit has been apprised of the exhaustion on August 24, 2010. True and correct copies of the August 24, 2010 letters are attached as **Exhibit B & C.**

### 2. Amerisure Umbrella Policy No. CU 1316446

14. Amerisure also issued policy number CU 1316446 to Summit, which has an effective period running from December 31, 2004 to September 20, 2005 (herein "Amerisure Umbrella Policy").[2] A true and correct copy of the Amerisure Umbrella Policy is attached as **Exhibit D.**

15. The Amerisure Umbrella Policy states in relevant part:

    **A.  COVERAGES**

        **1.  Insuring Agreement**

            a.    We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages which exceed the limit of "underlying liability insurance" or the "self-insured retention" because of:

                (1)    "Bodily injury",

                (2)    "Property damage" or

                (3)    "Personal and advertising injury"

---

[1] While originally written to be effective until December 31, 2005, the Amerisure Primary Policy was cancelled effective September 20, 2005.

[2] While originally written to be effective until December 31, 2005, the Amerisure Umbrella Policy was also cancelled effective September 20, 2005.

Caused by an "occurrence" to which this insurance applies.

\* \* \*

f. We have no duty to defend any claim or "suit" that any other insurer has a duty to defend.

\* \* \*

### D. CONDITIONS

\* \* \*

### 10. Other Insurance

This insurance is excess over all other policies except:

a. When the other policy was purchased to be in excess of this policy, or

b. When the terms of this policy and the other policy coincide to provide excess coverage for the same loss.

When this policy provides excess coverage coinciding with coverage provided under another policy, the method of sharing will be as follows:

(1) If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

(2) If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If a policy listed in the Schedule of Underlying Insurance is excess over any other valid and collectible primary or excess insurance policy available to any insured, the

insurance provided by this policy shall be excess of all such policies.

See Exhibit D.

### B. The Oxford Lawsuit

16. The underlying plaintiffs filed the Oxford lawsuit against general contractor Summit, in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, which seeks amounts allegedly attributable to the defective construction at the subject property. A true and correct copy of the Oxford lawsuit is attached as **Exhibit E.**

17. The complaint in the Oxford lawsuit alleges various construction defects resulting in water intrusion and property damage.

18. On May 25, 2010, Amerisure agreed to provide Summit with a defense in the Oxford lawsuit, subject to a full reservation of rights to withdraw its defense and/or indemnity.

19. On August 24, 2010, Amerisure informed Summit that the aggregate limit of coverage under the Amerisure Primary Policy had been exhausted by the payment of and resolution of other claims. See Exhibit B.

20. On November 8, 2010, Amerisure not only informed Summit again that the Amerisure Primary Policy limits had been exhausted, but also apprised Summit that Amerisure's Umbrella Policy was not implicated in relation to the Oxford lawsuit. A true and correct copy of the November 8, 2010 letter is attached as **Exhibit F.**

21. Specifically, Amerisure informed Summit that, as the excess insurer, pursuant to the terms of the Amerisure Umbrella Policy, its umbrella policy was not implicated insofar

as it is excess to all other policies, (e.g., Crum & Forster's primary policy GLO 090899, which contains a $50,000 Self Insured Retention Endorsement ("SIR")). See Exhibit F.

22. Despite other primary insurance being available to Summit in connection with the underlying lawsuits, Summit has made a demand for coverage of the Oxford lawsuit on Amerisure under the Amerisure Umbrella Policy.

### C. The Bordeaux Lawsuit

23. The underlying plaintiffs filed the Bordeaux lawsuit against general contractor Summit, in the Circuit Court of the 9th Judicial Circuit in and for Orange County, Florida, which seeks amounts allegedly attributable to the defective construction at the subject property. A true and correct copy of the Bordeaux lawsuit is attached as **Exhibit G.**

24. The complaint in the Bordeaux lawsuit alleges that Summit failed to adequately investigate, plan, develop, design, construct and inspect the project's construction, resulting in damages caused by various construction defects.

25. On September 21, 2009, Amerisure agreed to provide Summit with a defense in the Bordeaux lawsuit, subject to a full reservation of rights to withdraw its defense and/or indemnity.

26. On August 24, 2010, Amerisure informed Summit that the aggregate limit of coverage under the Amerisure Primary Policy had been exhausted by the payment of and resolution of other claims. See Exhibit C.

27. On November 8, 2010, Amerisure not only informed Summit again that the Amerisure Primary Policy limits had been exhausted, but also apprised Summit that


Amerisure's Umbrella Policy was not implicated in relation to the <u>Bordeaux</u> lawsuit. A true and correct copy of the November 8, 2010 letter is attached as **Exhibit H**.

28.     Amerisure informed Summit that, as the excess insurer, pursuant to the terms of the Amerisure Umbrella Policy, its umbrella policy has not been implicated insofar as it is excess to other available primary insurance, specifically Crum & Forster's primary policy GLO 090899, which contains a $50,000 Self Insured Retention Endorsement. <u>See</u> Exhibit H.

29.     Despite other primary insurance being available to Summit in connection with the underlying lawsuits, Summit has made a demand for coverage of the <u>Bordeaux</u> lawsuit on Amerisure under the Amerisure Umbrella Policy.

**D.     Crum & Forster's Position**

30.     Defendant, Crum & Forster provided the Crum & Forster CGL policies to Summit under the following policies: GLO 090899 (effective from 9/20/05 to 9/20/06); GLO 091290 (effective 9/20/06 to 9/20/07); GLO 101450 (effective 9/20/07 to 9/20/08); and GLO 131243 (effective from 9/20/08 to 9/20/09) (herein "Crum & Forster CGL policies"). A true and correct copy of Crum & Forster GLO 090899 (effective from 9/20/05 to 9/20/06) is attached as **Exhibit I.**

31.     On information and belief, Summit has submitted a notice of claim to Crum & Forster for the alleged damages in connection with Summit's work identified in the underlying lawsuits. True and correct copies of Crum & Forster's reservation of rights letters are attached as **Exhibits J & K**.

32.     On information and belief, based on the allegations in the underlying lawsuits, Crum & Forster has acknowledged that its responsibilities as a primary insurer have been

triggered and has agreed to defend Summit, subject to reservation of rights, after proof of exhaustion of Summit's $50,000 SIR. See Exhibit K.

## DECLARATORY JUDGMENT AGAINST DEFENDANTS

### (NO DUTIES OR OBLIGATIONS UNDER AMERISURE'S UMBRELLA POLICY UNLESS AND UNTIL SUCH TIME AS ALL OTHER, PRIMARY INSURANCE AVAILABLE TO SUMMIT IS EXHAUSTED)

33. Amerisure incorporates the allegations set forth within Paragraphs 1 through 32 as if fully set forth herein.

34. Amerisure has exhausted the applicable aggregate limits of coverage under its Primary Policy GL 2005207030004 issued to Summit, by the payment and resolution of other claims.

35. Summit is also insured by Crum & Forster under the valid and collectible policy GLO 090899 (effective from 9/20/05 to 9/20/06), for the claims asserted in the underlying lawsuits (herein "Crum & Forster policy").[3]

36. On information and belief, Crum & Forster has acknowledged its defense obligation to Summit in connection with the underlying lawsuits once Summit satisfies its $50,000 SIR. See Exhibit J & K.

37. Amerisure's Umbrella Policy is excess over and above all primary coverage available to Summit for the underlying lawsuits, including, but not limited to, the Crum & Forster policy.

---

[3] Crum & Forster also issued other primary policies to Summit that may apply to the above-referenced matters. Reference to Crum & Forster policy no. GLO 090899 herein should not be construed as excluding the application and required exhaustion of other applicable policies, see ¶¶ 9 & 30, before the Amerisure Umbrella Policy may respond. Indeed, as discussed herein, all other insurance must be exhausted before the Amerisure Umbrella Policy is implicated.

38. Umbrella coverages are regarded as true excess over and above any type of primary coverage, and thus, stand on a different footing than primary coverage.

39. Amerisure's true excess obligations, pursuant to the Amerisure Umbrella Policy, apply, if at all, to the extent that other available primary insurance has been exhausted.

40. Crum & Forster's primary policy is unexhausted and available to Summit in connection with the underlying lawsuits.

41. Amerisure, therefore, owes no duties or obligations to Summit under the Amerisure Umbrella Policy unless and until Summit first exhausts all available primary policies with Crum & Forster.

**WHEREFORE**, AMERISURE MUTUAL INSURANCE COMPANY requests entry of a declaratory judgment in its favor and against the Defendants, finding and declaring that: (1) the Crum & Forster primary CGL policies (defined herein), and any accompanying SIR obligations, must be exhausted prior to Amerisure's Umbrella Policy being called upon to defend or indemnify Summit in connection with the underlying lawsuits; (2) that Amerisure, under the Amerisure Umbrella Policy, has no present duty to defend or indemnify Summit in connection with those damages asserted against Summit in the underlying lawsuits insofar as available, primary insurance, (i.e., Crum & Forster's CGL policies), and any accompanying SIRs, remain unexhausted; (3) costs of initiating this suit; and (4) any and all other relief this Court deems just and proper.

DATED this 11th day of January, 2011.

Respectfully submitted,

By: _A. F. Russo_
*Attorney for Plaintiff Amerisure Mutual Insurance Company*

Andrew F. Russo, Esq.
FBN 508594
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
Suite 500, Perry Paint & Glass Building
109 Brush Street
Tampa, Florida 33602
(813) 229-7007 – Telephone
(813) 223-6544 – Facsimile
Email:arusso@rywantalvarez.com

Tressler No. 356887