UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERISURE MUTUAL INSURANCE COMPANY,

Plaintiff,

v. CASE NO. 8:11-CV-77-T-17TGW

SUMMIT CONTRACTORS, INC., et al.,

Defendants.

_______________________________/

ORDER

This cause is before the Court on:

Dkt. 25 Motion for Partial Summary Judgment
Dkt. 36 Response - Summit Contractors, Inc.
Dkt. 37 Response - Crum and Forster
Dkt. 45 Reply
Dkt. 46 Reply

In the Complaint, Plaintiff Amerisure Mutual Insurance Company ("Amerisure") seeks entry of a declaratory judgment pursuant to 28 U.S.C. Sec. 2201 against Defendants Summit Contractors, Inc. ("Summit") and Crum & Forster Specialty Insurance Company ("C & F").

Amerisure issued primary policy number GL 2005207030004 to Defendant Summit, which was effective from 12/31/2004 to 9/20/2005. Amerisure also issued policy number CR 1316446 to Defendant Summit, which was effective from 12/31/2004 to 9/20/2005. The primary policy was a commercial general liability insurance policy.

The second policy provided umbrella coverage.

In the Complaint, Plaintiff Amerisure requests entry of a declaratory judgment in its favor and against Defendants, declaring that:

> 1. the Crum & Forster primary CGL policies, and any accompanying SIR (self-insured retention) obligations, must be exhausted prior to Amerisure's Umbrella Policy being called upon to defend or indemnify Summit in connection with the underlying lawsuits (the "Oxford lawsuit" and "Bordeaux lawsuit");
>
> 2. that Amerisure, under the Amerisure Umbrella Policy, has no present duty to defend or indemnify Summit in connection with the damages asserted against Summit in the underlying lawsuits insofar as available, primary insurance (Crum & Forster's CGL policies), and any accompanying SIRs, remain unexhausted;
>
> 3. the costs of initiating this suit; and
>
> 4. any other appropriate relief.

Defendant/Counterplaintiff Summit has filed a Counterclaim for declaratory relief. (Dkt. 15). Defendant Summit seeks a declaration:

> 1. that Counterdefendant Amerisure owes a duty to defend and indemnify Summit against the underlying actions under Amerisure policy number 2005207030004 until its limits are properly exhausted;
>
> 2. that upon exhaustion of Amerisure policy number 2005207030004, Amerisure owes a duty to defend and indemnify Summit against the underlying actions under Amerisure policy number CU 1316446;
>
> 3. that attorney's fees, legal assistant fees and costs are available to Summit pursuant to Ch. 627.428 and Ch. 57.104, Florida Statutes; and
>
> 4. any other appropriate relief.

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

II. Statement of Facts

1. In the Oxford Place lawsuit, Case No. 10-CA-009364, Hillsborough County Circuit Court, the Oxford Place Condominium Association has sued the developer, architect, inspector and professional engineer as well as Summit Contractors, Inc. in twelve Count Complaint. Oxford Place Condominium Association sues Summit Contractors, Inc. in Count VII for violation of Ch. 553.84, Florida Statutes, violation of

the State Minimum Building Code, and in Count VIII for negligence, alleging that Summit, by itself and through its agents, servants and employees, breached its duty to the Oxford Place Condominium Association to construct, supervise, inspect and approve the Condominium's buildings and improvements in accordance with the applicable State Minimum Building Code, proper and approved plans and specifications, and proper design, engineering and construction practices. The Complaint further alleges that Summit was negligent in constructing the Condominium's buildings and improvements with various specified defects and deficiencies. The Complaint alleges that the breach caused resulting damages to the Condominium's buildings and improvements, and separate damages to the contents and other property of the individual Unit Owners, necessitating repairs to the resulting damage.

Counts VII and VIII incorporate paragraph 23 by reference, which states:

> The existence or cause of the defects and deficiencies set forth in Exhibit "A" are not such as are recognizable by persons who lack special knowledge or training or they are hidden by building components or finishes, and they are latent defects and deficiencies to unit owners who, in the exercise of reasonable diligence, did not discover the existence or cause of such defects or deficiencies until after the purchase and occupancy of the Condo minium units.

2. In the Bordeaux lawsuit, Case No. 2009-CA-27435, Orange County Circuit Court, the Bordeaux Condominium Association sues Summit Contractors, Inc. and the developer. The Bordeaux Condominium Association sues Summit Contractors, Inc. in Count I, Violation of Ch. 553.84, Florida Statutes, for violation of the State Minimum Building Code, alleging damage in specified ways to condominium buildings and surrounding civil drainage, landscaping, irrigation, pavements and hardscapes, and alleging that the code violations are the legal and factual cause of the damage. The Bordeaux Condominium Association sues Summit Contractors, Inc. in Count V for negligence, alleging breach of the duty to exercise reasonable care to design, develop,

construct and inspect the Subject Property free from defect or deficiency, and safe for habitation. The Complaint also alleges a breach of the duty to use due care and perform in competent and workmanlike manner all work activity to which Summit agreed to and was required to perform. The Complaint alleges that Summit negligently, carelessly, wrongfully and recklessly designed, constructed, inspected and converted the Subject Property in a defective and deficient manner as specified, breached the duty of care, and violated building and construction codes and ordinances in force to protect the Association and its members from the injury caused by the defects and deficiencies. The Complaint alleges that all defects which were in existence at the time of completion of the Subject Property were latent and/or concealed, and the damages are continuous and progressive over time.

3. Amerisure Primary Policy No. GL 2005207030004, a CGL policy which provided coverage to the named insured Summit Contractors, Inc. from 12/31/2004 to 12/31/2005, having general policy limit of $2,000,000, a products completed limit of $2,000,000 and per occurrence limit of $1,000,000, provides:

> **Coverage A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result.
>
> ....

Case No. 8:11-CV-77-T-17TGW

**b.** This insurance applies to “bodily injury” and “property damage” only if:

**(1)** The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”;

**(2)** The “bodily injury” or “property damage” occurs in the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II–Who is An Insured and no “employee” authorized by you to give or receive notice of an “occurrence” or claim, knew that the “bodily injury” or “property damage” had occurred, in whole or in part. If such a listed insured or authorized “employee” knew, prior to the policy period, that the “bodily injury” or “property damage” occurred, then any continuation, change or resumption of such “bodily injury” or “property damage” during or after the policy period will be deemed to have been known prior to the policy period.

....

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

.....

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(c) **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this

method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

....

**17.** **"**Property damage" means:

**a.** physical damage to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.....

The premium for the above Policy was $616,579. (Dkt. 1-2, p. 2).

4. The Amerisure Primary policy was cancelled effective 9/20/2005.

5. Amerisure's Umbrella Policy No. CU 1316446, covering Summit Contractors, Inc. from 12/31/2004 to 12/31/2005, with policy limits of $5,000,000 provides:

A. **Coverages**

1. **Insuring Agreement**

a. We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages which exceed the limit of "underlying liability insurance " or the "self-insured retention" because of:

(1) "Bodily injury",
(2) "Property damage" or
(3) "Personal and advertising injury"

Caused by an "occurrence" to which this insurance applies.

Case No. 8:11-CV-77-T-17TGW

....

f.  We have no duty to defend any claim or "suit" that any other insurer has a duty to defend.  If we elect to join the defense of such claims or "suits" we will pay all expenses we incur.

....

**D.  Conditions**

....

**10.  Other Insurance**

This insurance is excess over all other policies except:

a.  When the other policy was purchased to be in excess of this policy, or

b.  When the terms of this policy and the other policy coincide to provide excess coverage for the same loss.

When this policy provides excess coverage coinciding with coverage provided under another policy, the method of sharing will be as follows:

**(1)**  If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**(2)** If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If a policy listed in the Schedule of Underlying Insurance is excess over any other valid and collectable primary or excess insurance policy available to the insured, the insurance provided by this policy shall be in excess of all

such policies.

....

17. **Loss Payable**

We will not pay any amount of loss due to an "occurrence" until the underlying liability insurer has paid the loss for the "occurrence" under the provisions of the "underlying liability insurance" or the insured has paid the "self-insured" retention, whichever applies.

The premium for the above Policy was $239,392.00. (Dkt. 1-6, p. 2).

6. Pursuant to the Amerisure Umbrella Policy, "Self-insured retention" is:

20. "Self-insured retention" means the amount you must pay in damages when "underlying liability insurance" is:

a. Not subject to condition 11. Maintenance of Underlying Insurance;

b. Not carried by you.

The "self-insured retention" amount is shown in item 3.(c) of the Declarations.

Your obligation under the "self-insured retention" is from the first dollar of loss.

7. The Amerisure Umbrella Policy was cancelled effective 9/20/2005.

8. The C & F Policy number GLO 090899 , a CGL policy covering the named insured Summit Contractors, Inc. from 9/20/2005 to 9/20/2006, with general policy limits of $2,000,000 and per occurrence limit of $1,000,000, provides:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally

obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result.

....

**b.** This insurance applies to “bodily injury” and “property damage” only if:

**....**

**(2)** The “bodily injury” or “property damage” occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II–Who is An Insured and no “employee” authorized by you to give or receive notice of an “occurrence” or claim, knew that the “bodily injury” or “property damage” had occurred, in whole or in part. If such a listed insured or authorized “employee” knew, prior to the policy period, that the “bodily injury” or “property damage” occurred, then any continuation, change or resumption of such “bodily injury” or “property damage” during or after the policy period will be deemed to have been known prior to the policy period.

....

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If

this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

....

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this

Case No. 8:11-CV-77-T-17TGW

Coverage Part.

9. An endorsement changes the "Other Insurance" in Section 4 (above), and provides:

**4. Other Insurance**

This insurance is excess of all other insurance except insurance specifically purchased to apply in excess of this insurance, and shall not contribute with any other insurance. This insurance is in excess of the Self Insured Retention in all circumstances. The Self Insured Retention can only be reduced or exhausted by your payment of settlements or judgments for damages which would otherwise be covered under the terms of this insurance. It cannot be reduced or exhausted by other insurance that may be available to you unless the other insurance was purchased by you for the specific purpose of reducing or replacing the Self Insured Retention.

The premium for the above Policy was $690,000.00. (Dkt. 1-12, p. 2).

10. The Declarations of the C & F Policy establishes that the Self-Insured Retention applies on a per claim basis. (Dkt. 1-12, p. 2). The Self-Insured Retention endorsement of the C & F Policy (Dkt. 1-13, p. 25) provides:

2. The above Limits apply as follows:

....

**Per Claim Basis**: If the Self Insured Retention limit indicated in the Schedule is on a Per Claim Basis, the Self Insured Retention applies as follows:

1. Under Bodily Injury and/or Property Damage Liability and Medical Payments, combined, to all damages and medical expenses sustained by any one person or organization because of "bodily injury" and "property damage" , combined, as the result of any one "occurrence";

Case No. 8:11-CV-77-T-17TGW

....

3. Our obligation to pay damages and defend claims or "suits" under this policy applies only when the amount of the Self Insured Retention has been exhausted by the insured's payment of damages or "Claims Expense" that would be covered by policy but for the application of the Self Insured Retention.

The Insured shall have the obligation to provide, at his own expense, proper defense and investigation of any claim or "suit" and to accept any reasonable offer of settlement within the Self Insured Retention. The Insured's obligation to provide for his own defense is terminated upon exhaustion of the Self-Insured Retention referenced above. **Compliance with this clause is a condition precedent for coverage under this policy. In the event of the failure of the insured to comply with this clause, no loss, cost or expense shall be payable by the Company.**

....

6. We shall have the right in all cases, but not the obligation, to assume control of the investigation, defense and/or settlement of any claim or "suit" and upon written request from us the Insured shall pay directly any expense or loss incurred by us in the investigation, defense, settlement and/or satisfaction of judgment of any claim or "suit" within the Self-Insured Retention.

11. The C & F Policy includes the "Continuous or Progressive Injury and Damage Exclusion" as an endorsement to the C & F Policy. (Dkt. 1-12, p. 33).

12. On May 25, 2010, Plaintiff Amerisure agreed to provide Defendant Summit with a defense in the Oxford Place lawsuit, subject to a full reservation of rights to withdraw its defense and/or indemnity. On August 24, 2010, Plaintiff Amerisure notified Defendant Summit that the aggregate limit of coverage under the Amerisure Primary Policy had been exhausted by the payment of and resolution of other claims. On November 8, 2010, Plaintiff Amerisure again notified Defendant Summit that the policy limits on Amerisure's Primary Policy had been exhausted, and also notified Defendant

Summit that Amerisure's Umbrella Policy was not implicated in relation to the Oxford Place lawsuit.

13. On September 21, 2009, Plaintiff Amerisure agreed to provide Defendant Summit with a defense in the Bordeaux lawsuit, subject to a full reservation of rights to withdraw its defense and/or indemnity. On August 24, 2010, Plaintiff Amerisure informed Defendant Summit that the aggregate limit of coverage under the Amerisure Primary Policy had been exhausted by payment and resolution of other claims. On November 8, 2010, Plaintiff Amerisure against notified Defendant Summit that Plaintiff's Primary Policy limits were exhausted, and notified Defendant Summit that Plaintiff's Umbrella Policy was not implicated in relation to the Bordeaux lawsuit.

III. Discussion

Plaintiff Amerisure seeks entry of partial summary judgment that the Amerisure Umbrella policy is in excess to the Crum & Forster Primary policy, and that the Amerisure Umbrella policy need not respond until all available primary insurance has been exhausted. Plaintiff Amerisure argues that Defendant C & F has acknowledged its duty to defend Defendant Summit in the Underlying Lawsuits following Summit's exhaustion of its self-insured retention.

A. Response - Defendant Summit

Defendant Summit argues that the Amerisure Umbrella policy does not call for horizontal exhaustion, and Defendant Crum & Forster's CGL policy covers a different time period than the Amerisure Umbrella policy, and therefore insures different risks. Defendant Summit argues that if property damage actually occurred between 12/31/2004 and 9/20/2005, the underlying Amerisure primary policy would be triggered. If the Amerisure CGL coverage was exhausted, the Amerisure Umbrella policy would