UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERISURE MUTUAL INSURANCE
COMPANY,

    Plaintiff,

v.           CASE NO.  8:11-CV-77-T-17TGW

SUMMIT CONTRACTORS,
INC., and CRUM & FORSTER
SPECIALTY INSURANCE
COMPANY,

    Defendants.

_____/

SUMMIT CONTRACTORS,

    Counterplaintiff,

v.

AMERISURE MUTUAL INSURANCE
COMPANY,

    Counterdefendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 85 Motion for Summary Judgment on Summit's
     Counterclaim by Amerisure
Dkt. 86 Motion for Partial Summary Judgment Against
     Amerisure As To Duty To Defend
     During Periods When Summit Was Not Being
     Defended By Any Other Insurers
Dkt. 87 Notice

Case No. 8:11-CV-77-T-17TGW

Dkt. 93   Motion for Entry of Partial Final Judgment
Dkt. 94   Response (Crum & Forster)
Dkt. 95   Response (Amerisure)
Dkt. 96   Response (Summit)
Dkt. 97   Response (Summit)
Dkt. 110  Reply
Dkt. 112  Reply


I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

Case No. 8:11-CV-77-T-17TGW

II. Discussion

This case was set for jury trial. (Dkts. 27, 34).   The parties stipulated to the withdrawal of the demand for jury trial, and notified the Court that all remaining issues to be resolved in this case are legal in nature, and should be resolved without the necessity of a trial. (Dkt. 106).

The Court incorporates the Statement of Undisputed Facts in Plaintiff/Counterclaim Defendant Amerisure's Motion for Summary Judgment; a copy is attached to this Order for ease of reference.

The Court applies Florida law to this case, and incorporates the principles stated in the Court's prior summary judgment Order (Dkt. 73, pp. 18-19).

A.   Dkt. 85    Motion for Summary Judgment on Counterclaim
     Dkt. 96    Response
     Dkt. 110   Reply

In the Counterclaim, Counterclaim Plaintiff Summit Contractors, Inc. ("Summit") seeks a declaratory judgment as to the duties owed to Summit by Counterclaim Defendant Amerisure Mutual Insurance Company ("Amerisure") pursuant to Commercial General Liability Policy No. 2005207030004 (Dkt. 1, Ex. A) and Umbrella Policy No. CU 1316446 (Dkt. 1, Ex. D), which insured Counterclaim Plaintiff for the policy period December 31, 2004 through September 20, 2005.  Summit alleges Summit has been sued in two construction defect case, Case No. 10-CA-009364, Hillsborough County Circuit Court, Oxford Place At Tampa Palms Condominium Association, Inc. v. Tampa Palms Tarragon LLC et al., and Case No. 09-CA-27435, Orange County Circuit Court, The Bordeaux Condominium Association v. Summit Contractors, Inc. and Lake Lotta Apartment, LLC.  Summit believes that coverage is available under the CGL Policy, and if the Court finds that Policy's limits are exhausted,

3

Case No. 8:11-CV-77-T-17TGW

then coverage is available under the Umbrella Policy.  Summit alleges:

1. Improper allocation of claims payments to the CGL Policy;
2. Amerisure has asserted that the CGL Policy is exhausted by virtue of the allocation of payments made in prior cases according to the "manifestation" trigger of coverage;
3. Any allocations made pursuant to the "manifestation" trigger are in error, as Florida is governed by the "injury in fact" trigger of coverage;
4. Amerisure has not credited amounts recovered from third parties to the CGL Policy, refreshing its limits; if those amounts had been credited, the policy would not be exhausted;
5. Amerisure's Umbrella Policy does not authorize the application of "horizontal exhaustion" to the facts of this case.  There is no language in the insuring agreement or the "Other Insurance" provision of the excess policy which eliminates Amerisure's obligation to defend when the underlying insurance has been exhausted.  The Crum & Forster policies attached to the complaint Insure different policy periods and thus insure different risks. Assuming that the CGL Policy is exhausted, only Amerisure's Umbrella Policy insures the risk between 12/31/2004 and 12/31/2005 (sic).

Summit seeks a declaratory judgment that, inter alia:

1. Amerisure owes a duty to defend and indemnify Summit against the underlying actions under Policy No. 2005207030004 until its limits are properly exhausted;

2. Upon exhaustion of Policy No. 200507030004, Amerisure owes a duty to defend and indemnify Summit against the underlying actions under Umbrella Policy No. CU 1316446.

Counterclaim Defendant Amerisure moves for entry of summary judgment on Summit's Counterclaim.

1. Duty to Indemnify Relative to Oxford Place Lawsuit

The Oxford Place Lawsuit was settled on Summit's behalf by Crum & Forster Specialty Insurance Co., who insured Summit under a primary CGL policy (Dkt. 1, Ex. I).  Summit did not contribute to the settlement. (Dkt. 85-8, p. 3).  Amerisure argues that

Case No. 8:11-CV-77-T-17TGW

Summit cannot seek, and has not sought, a recovery of any <u>Oxford Place</u> settlement amounts paid on Summit's behalf in this action.  Amerisure requests the entry of summary judgment in favor of Amerisure, finding that Amerisure owes Summit no indemnity obligation relative to the <u>Oxford Place</u> Lawsuit.

After consideration, the Court **grants** Amerisure's Motion for Summary Judgment (Dkt. 85)  as to this issue.

2.  Duty to Indemnify Relative to <u>Bordeaux</u> Lawsuit

The <u>Bordeaux</u> Lawsuit is still pending; the Court has separately granted Defendant/Counterclaim Plaintiff Summit's Motion to Stay.

3.  Exhaustion

In <u>The Edge at Reno</u> Lawsuit, Summit and others were sued for failure to properly plan, design, engineer, investigate, inspect, supervise and construct certain properties in Reno, Nevada.  Certificates of occupancy were issued on November 30, 2005 and December 1, 2005.  The alleged losses occurred after Summit's operations were completed.  In <u>The Edge at Reno</u> Lawsuit, Amerisure paid $3.95 million on behalf of Summit on 6/23/2010.

In the <u>Fenwick</u> Lawsuit, Summit and others were sued for failure to properly design, manufacture sale, market, distribute and construct certain properties in South Carolina.  In the <u>Fenwick</u> Lawsuit, Amerisure paid $5 million on behalf of Summit on 8/6/2010.

Amerisure's CGL Policy had a "Products Completed Operations" Limit of $2 million, and an "Each Occurrence" Limit of $1 million.  (Dkt. 1-2. p. 5).

Case No. 8:11-CV-77-T-17TGW

Summit has admitted that Amerisure paid the above amounts.  After consideration, the Court finds that the Amerisure Primary Policy limits were exhausted by the payment of other claims.

4.   Improper Allocation

In The Edge At Reno Lawsuit, Amerisure allocated $1 million to the Amerisure Primary Policy and $2.95 million to the Umbrella Policy.  (Dkt. 85-4).  Summit's corporate representative, Mr. Hugh Davenport ("Davenport"), was involved in the settlement discussions and encouraged the settlement of the claim on Summit's behalf. In his deposition, Davenport conceded that Amerisure properly allocated the $3.95 million paid on behalf of Summit.

In the Fenwick Lawsuit, which was governed by South Carolina law, Amerisure allocated $5 million among three triggered Amerisure policies, in accordance with South Carolina law's injury-in-fact trigger.  Crossman Cmtys. of N.C. v. Harleysville Mut. Ins. Co., 395 S.C. 40, 52 (S.C. 2011)(coverage triggered at time of injury-in-fact).

Amerisure allocated the $5 million settlement payment in equal portions over the following years: 1) 12/31/2002 to 12/31/2003; 2) 12//31/2003 to 12/31/2004; and 3) 12/31/2004 to 9/20/2005.  Summit was apprised of, and agreed with, Amerisure's allocation.  (Davenport Deposition, Dkt. 85-2, pp. 73-77).  Amerisure allocated $1 million to the Primary Policy and $666,666 to the Umbrella Policy.  (Dkt. 85-5).

After consideration, the Court finds that Amerisure properly allocated the amounts paid in settlement in The Edge At Reno Lawsuit and the Fenwick Lawsuit.

Case No. 8:11-CV-77-T-17TGW

5. Replenishment of Umbrella Policy

Summit argues that Amerisure incorrectly credited the entire recovery of $250,000 from Crum & Forster to Umbrella Policy CU1316446. Summit argues that Amerisure's CGL Policy and Umbrella Policy do not contain specific policy language as to which policy is first "replenished." Summit argues that Amerisure did not make a replenishment decision that was in the best interest of its insured, which in this context means that Amerisure should have replenished the limits of its CGL policy so that there was a continuing duty to defend its insured, Summit. Summit further argues that pursuant to the Settlement Agreement (par. 4.A) between Crum & Forster, Amerisure and Summit in The Edge At Reno Nevada Declaratory Judgment action, the $250,000 should have been credited to the CGL and the Umbrella Policies, replenishing the limits of both policies. Summit contends that the $250,000 replenishment of only the Umbrella Policy was contrary to the plain language of both Policies and the Settlement Agreement.

The Edge At Reno Lawsuit was a declaratory judgment action in which Amerisure sought a judicial declaration that its policies did not afford coverage to Summit as to the Underlying Litigation. Amerisure represented that in the event the parties were unable to reach a settlement agreement, Amerisure intended to amend the complaint in the Action to seek equitable contribution or reimbursement from Crum under the Crum Policy toward Summit's defense and indemnity costs that were incurred by Amerisure. (Dkt. 85-6, p. 3, par. E.). Summit asserted a Counterclaim against Amerisure seeking a judicial declaration regarding the policy benefits, if any, available to Summit pursuant to the terms of the Amerisure Primary Policy and the Amerisure Umbrella Policy. Summit asserted a Cross-Claim against Crum, seeking a judicial declaration regarding the policy benefits, if any, available to Summit pursuant to the terms of the Crum Policy as well as other policies issued by Crum. (Dkt. 85-6, p. 3, par. F.). Crum denied any obligation to defend or indemnify Summit in the Underlying

Case No. 8:11-CV-77-T-17TGW

Litigation, or to contribute toward Summit's defense and indemnity costs in the
Underlying Litigation that were incurred by Amerisure, Summit or any other person or
entity.  (Dkt. 85-6, p. 4, par. G).


       Par. 4.A provides:


       A.  Crum shall pay AMIC a total amount of $250,000
       as contribution toward the $3,950.000 paid by AMIC in settlement of
       claims made against Summit in the Underlying Litigation pursuant to the
       terms of the "General Release and Settlement Agreement" attached to
       this Agreement as Exhibit A.  Crum shall not make any contribution
       toward the defense costs incurred by AMIC or AIC on behalf of Summit in
       the Underlying Litigation.  Except as provided in this paragraph 4.A, no
       Party shall make any payment to any other Party pursuant to the terms of
       this Agreement.

       B.  The settlement payment of $250,000 by Crum required by Paragraph
       4.A shall be made within 20 days of the Settlement Date, and made
       payable to "Amerisure Mutual Insurance Company" (tax identification
       number 38-0829210).  The settlement payment shall be sent to Amerisure
       directly via traceable overnight mail, and shall be sent to the attention of
       William Goodman, Amerisure Insurance Company at 140 Fountain
       Square Parkway, Suite 200, St. Petersburg, Florida, 33733-1285.

(Dkt. 85-6, p. 4).


The Court notes that the Settlement Agreement is an integrated agreement.  (Dkt. 85-6,
p. 6, par. 16).   The Settlement Agreement is a compromise of a disputed claim, without
admission of fault, liability or guilt, and reflects the mutual desire  and intention of the
Settling Parties to release, settle, compromise and resolve all Claims, whether known or
unknown, alleged in the Action or arising out of or relating to the Property or Underlying
Litigation.  (Dkt. 85-6, p. 4, par H.).   The Settlement Agreement includes a Covenant
Not to Sue, in which the parties agreed not to commence, prosecute or continue any
legal action against any persons or entity released by the Agreement, except for a suit
to enforce the terms of the settlement.  (Dkt. 85-6, par. 7).   The Settlement Agreement

Case No. 8:11-CV-77-T-17TGW

provides:

> 6. <u>Releases Among Parties.</u>  The Parties, and each of them, on their own behalves and on behalf of their Related Persons or Entities, do hereby fully and finally settle, release, acquit and forever discharge all Parties and each of them, and their respective Related Persons and Entities, as to any and all Claims, known or unknown, alleged in the Action or arising out of or relating to the Property or the Underlying Litigation.

(Dkt. 86-5, p. 4, par. 6).

Amerisure  agreed to provide Summit with a defense in the <u>Bordeaux</u> Lawsuit on September 21, 2009, and agreed to provide Summit with a defense in the <u>Oxford</u> <u>Place</u> Lawsuit on May 25, 2010.  Summit knew about those Lawsuits at the time that Summit participated in the settlement discussions as to <u>The Edge At Reno</u> Lawsuit.  Mr. Hugh Davenport executed the Settlement Agreement on behalf of Summit; the Settlement Agreement does not include any express agreement between Summit and Amerisure as to the application of the funds recovered from Crum.   In his deposition, Davenport could not explain the basis for Summit's allegation that Amerisure improperly replenished the Umbrella Policy.  Davenport testified that Summit internally never determined that Amerisure needed to replenish the Primary CGL Policy, and accepted the advice of counsel.

Amerisure argues that, given that the millions paid in settlement on behalf of Summit were well into the Umbrella Policy, it would be illogical and unworkable for replenishment at the primary layer, as it would result in the Umbrella Policy not being implicated by virtue of an unexhausted Primary Policy.   Amerisure also argues that, if Amerisure had applied the contribution to the primary layer in <u>The Edge At Reno</u> Lawsuit, the Amerisure Primary Policy would have been exhausted by subsequent payments made on behalf of Summit in the <u>Fenwick</u> action.  This would have put

Case No. 8:11-CV-77-T-17TGW

Summit in the same position, a replenished $250K at the umbrella layer.

Amerisure further argues that Amerisure was contractually required to replenish
the Umbrella Policy, pursuant to the terms of Amerisure's contract with its reinsurer:

> The Reinsurer shall be credited with salvage or subrogation recoveries
> (i.e., reimbursement obtained or recovery made by the Company, less
> loss adjustment expense incurred in obtaining such reimbursement or
> making such recovery) on account of claims and settlements involving
> reinsurance hereunder. Salvage thereon shall always be used to
> reimburse the excess carriers in the reverse order of their priority
> according to their participation before being used in any way to reimburse
> the Company for its primary loss. The Company hereby agrees to enforce
> its rights to salvage or subrogation relating to any loss, a part of which
> loss was sustained by the Reinsurer, and to prosecute all claims arising
> out of such rights.

(Dkt. 85-9, Ex. I, p. 33).

Amerisure argues that Summit has offered no basis to support Summit's contention that
Amerisure improperly replenished the Umbrella Policy.

In contending that Amerisure did not act in the best interest of its insured in
replenishing the Umbrella Policy with the $250,000 recovery, Summit is contending that
Amerisure did not fulfill its duty to exercise good faith in handling claims against its
insured:

> An insurer, in handling the defense of claims against its
> insured, has a duty to the use the same degree of care and
> diligence as a person of ordinary care and prudence should
> exercise in the management of his own business. For when
> the insured has surrendered to the insurer all control over
> the handling of the claim, including all decisions with regard
> to litigation and settlement, then the insurer must assume a
> duty to exercise such control and make such decisions in

Case No. 8:11-CV-77-T-17TGW

> good faith and with due regard for the interests of the
> insured.  This good faith duty obligates the insurer to advise
> the insured of settlement opportunities, to advise as to the
> probable outcome of the litigation, to warn of the possibility
> of an excess judgment, and to advise the insured of any
> steps he might take to avoid same.  The insurer must
> investigate the facts, give fair consideration to a settlement
> offer that is no unreasonable under the facts, and settle, if
> possible, where a reasonably prudent person, faced with the
> prospect of paying the total recovery, would do so.  Because
> the duty of good faith involves diligence and care in the
> investigation or evaluation of the claim against the insured,
> negligence is relevant to the question of good faith.

See Boston Old Colony Insurance Co. v. Gutierrez, 381 So.2d 783 (Fla. 1980).    In

Shuster v. South Broward Hosp. Dist. Physicians' Prof. Liab. Ins. Trust, 591 So.2d 174

(Fla. 1992), the Florida Supreme Court recognized that, although there is a duty on

behalf of the insurer to exercise good faith in the settlement of claims, including

settlements within the policy limits, this duty may be limited contractually by a provision

which permits the insurer to settle claims as it deems expedient or in its self-interest,

subject to exceptions such as where an insurer settles the claims of one party in a

multi-party, multi-claim case, leaving the insured exposed to a personal judgment for

contribution, or where the insured was prevented from pursuing a counterclaim.

Under Florida law this contractual limitation usually means that the insurer may settle a

claim within the insurer's limits of liability over the objection of the insured if the insurer

deems it appropriate to do so.  See e.g. Rogers v. Chicago Ins. Co., 964 So.2d 280

(Fla. 4th DCA 2007).   Amerisure's CGL Policy provides:

> COVERAGE A BODILY INJURY AND PROPERTY
> DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. ......We may, at our discretion, investigate any
> "occurrence" and settle any claim or suit that may
> result......But:

11

Case No. 8:11-CV-77-T-17TGW

......

> No other obligation or liability to pay sums or perform acts or
> services is covered unless explicitly provided for under
> Supplementary Payments–Coverages A and B.

(Dkt. 1-2, p. 34). Amerisure's Umbrella Policy provides:

> A. COVERAGES
>
> 1. Insuring Agreement
>
> .......
>
> We may at our discretion investigate an "occurrence" and
> settle any claim or "suit" that may result.  But, the amount we
> will pay for damages is limited as described in **C.  LIMITS
> OF INSURANCE.**
>
> No other obligation or liability to pay sums or perform acts or
> services is covered unless explicitly provided for under **3.
> Supplementary Payments.**

The insurance policies at issue clearly grant Amerisure the authority to settle claims in

its own self interest within Amerisure's limits of liability; in The Edge At Reno Lawsuit,

the settlement amount was within Amerisure's total limits of liability under the CGL and

Umbrella Policies.   Crum paid $250,000 as a contribution toward the $3,950,000 paid

by Amerisure in settlement of the claims made against Summit; given Amerisure's

discretion to settle the claim in its own self interest, in the absence of any agreement

otherwise, how Amerisure applied the contribution toward the settlement was within

Amerisure's discretion.

The ultimate decision to enter into a compromise settlement rests with the

parties.  In The Edge At Reno Lawsuit,  Summit consented to the terms of the

Settlement Agreement as stated therein; the result was a settlement within the policy

limits of the Primary and Umbrella Policies, and the conclusion of The Edge At Reno

Case No. 8:11-CV-77-T-17TGW

Lawsuit as well as the Underlying Lawsuit. Summit did not view Amerisure's handling of the claims against Summit in The Edge At Reno Lawsuit and the Underlying Action to be in bad faith; only Amerisure's subsequent application of the Crum recovery to the limits of the Umbrella Policy has evoked the Summit's "bad faith" contention. Summit had the opportunity to negotiate for an express agreement applying the recovery from Crum, but the Settlement Agreement does not contain an express provision requiring that Amerisure replenish the policy limits of the Primary Policy. It troubles the Court that Summit approved Amerisure's conduct in The Edge At Reno Lawsuit and accepted its benefits, but now complains that Amerisure's conduct violated its fiduciary duty to Summit in this case, involving a completely different claim.

In light of the undisputed facts of this case, Amerisure's decision to replenish the limits of the Umbrella Policy was reasonable. Replenishing the limits of the Umbrella Policy avoided any potential issue as to the exhaustion of the Primary Policy; in that sense, replenishing the Umbrella Policy rather than the Primary Policy was in Summit's best interest as to The Edge At Reno Lawsuit. The amount paid in settlement from the Umbrella Policy was almost three times the amount paid in settlement from the Primary Policy, which was a significant benefit to Summit. Amerisure's agreement with its Re-insurers, with its attendant contractual duty, also shows that Amerisure's decision to replenish the Umbrella Policy was not arbitrary. The Court also notes that if Amerisure had elected to apply the $250,000 recovery to the Primary Policy or to both Policies, after the Fenwick settlement, the Primary Policy would once again have been exhausted, so that any benefit to Summit would have evaporated.

After consideration, the Court finds that Amerisure properly replenished the Umbrella Policy. Accordingly, it is

**ORDERED** that Amerisure's Motion for Summary Judgment on Counterclaim (Dkt. 85) is **granted**.

13

Case No. 8:11-CV-77-T-17TGW

B.  Dkt. 86      Motion for Partial Summary Judgment
    Dkt. 95      Response
    Dkt. 112     Reply

The Court previously determined that Amerisure had no duty to defend Summit after Amerisure's primary policy was exhausted and C&F acknowledged the duty to defend Summit under C&F's primary policies. (Dkt. 73). In the Order, the Court states:

> The Court notes that [the] majority rule, reflected in cases from other Courts, and established practice in the insurance industry, is that where an insured maintains both primary and excess policies, the excess liability insurer is not obligated to participate in the defense until the primary policy limits of all primary policies are exhausted. The smaller premiums paid for umbrella coverage reflect the reduced risk.....

C&F acknowledged its duty to defend Summit upon the exhaustion of the $50,000 Self Insured Retention ("SIR") that Summit elected when Summit obtained the C&F Policy. An Amended Order has been entered, but the Court's rulings have not changed.

The Court granted Summit's Motion for Clarification, and agreed to consider the issues raised in  Summit's Motion for Partial Summary Judgment.

Summit now moves for partial summary judgment as to the duty to defend during the periods when Summit was not being defended by any other insurers. Summit argues that Summit defended itself in the Oxford Place Lawsuit from November 8, 2010 through June 17, 2011, and in the Bordeaux Lawsuit from November 8, 2010 through June 20, 2011.

Summit seeks entry of a declaratory judgment that Amerisure had a duty to

14

Case No. 8:11-CV-77-T-17TGW

defend Summit as to the <u>Oxford Place</u> and <u>Bordeaux</u> Lawsuits during the time periods when Summit was not being defended by any other carrier, and that Amerisure had a duty to defend as to both Lawsuits until the time C&F actually began defending Summit. Summit seeks the award of reasonable attorney's fees and costs Summit paid during the time periods that Summit defended itself, and the award of prejudgment interest on all reasonable attorney's fees and costs Summit paid during the time periods that Summit defended itself.

Under Florida law, "in the absence of an express statutory or contractual duty to defend, there is no such duty." <u>Allstate Ins. Co. v. RJT Enters.</u>, 692 So.2d 142, 144 (Fla. 1997). "...[W]hether or not an excess insurer is required to "drop down" and defend its insured depends solely on how that duty is defined by the terms of the excess insurance contract." <u>National Union Fire Insurance Co. of Pittsburgh, PA v. The Travelers Ins. Co.</u>, 214 F.3d 1269, 1273 (11th Cir. 2000).

Policy CU 1316446 provides:

A. COVERAGES

1. Insuring Agreement

......

f.   We have no duty to defend any claim or "suit" that any other insurer has a duty to defend.  If we elect to join in the defense of such claims or "suits", we will pay all expenses we incur.

.....

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **3. Supplementary Payments**.

(Dkt. 1-6, p. 6).  The policy also provides:

Case No. 8:11-CV-77-T-17TGW

### 10. Other Insurance

This insurance is excess over all other policies except:

a. When the other policy was purchased to be in excess of this policy, or

b. When the terms of this policy and the other policy coincide to provide excess coverage for the same loss.

(Dkt. 1-6, p. 16).

Amerisure fulfilled its duty to defend under the primary CGL policy until the policy limits were exhausted.  That policy provided that:

> (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

C&F acknowledged that the allegations of the Oxford Place and Bordeaux Lawsuits involved claims potentially within the coverage of C&F's primary policy.    The Declination of Coverage Letter of November 8, 2010 states:

> Crum & Forster provided primary liability coverage to Summit and has advised that its policy no. GLO 090899, effective September 20, 2005 to September 20, 2006, affords coverage to Summit in the above-referenced action subject to a reservation of rights.  The Crum & Forster policy contains a $50,000 Self Insured Retention Endorsement that applies on a per claim basis.  Summit is presently sharing in the costs of its defense with Amerisure on an equal basis until the SIR is exhausted in claims expenses and/or damages and Crum & Forster assumes its defense obligations under policy no. GLO 090899.

The duty of an excess insurer to "drop down" does not arise when the defense of the insured and claims against the insured are within the coverage of a primary insurer

16

Case No. 8:11-CV-77-T-17TGW

whose policy limits are not exhausted.

The Court cannot rewrite the terms of the Umbrella Policy. After consideration, the Court **denies** Summit's Motion for Partial Summary Judgment. Accordingly, it is

**ORDERED** that Summit's Motion for Partial Summary Judgment (Dkt. 86) is **denied**.

C. Dkt. 93    Motion for Entry of Partial Final Judgment
   Dkt. 97    Response
   Dkt. 112   Reply

Amerisure moves for entry of a Partial Final Judgment pursuant to Fed. R. Civ. P. 54 on the Court's Order (Dkt. 73), in which the Court determined that Amerisure has no duty to defend under the Umbrella Policy. Since that time, the Oxford Place Lawsuit has been settled. Summit did not pay any amounts toward the settlement. Amerisure has moved for summary judgment on Amerisure's duty to indemnify as to the Oxford Place Lawsuit (Dkt. 85), which the Court has granted. The Bordeaux Lawsuit is pending. Therefore, the Court cannot determine the duty to indemnify as to the Bordeaux Lawsuit.

The Court has entered an Amended Order to correct a mis-statement in the prior Order (Dkt. 73). After consideration, the Court **grants** the Motion for Entry of Partial Final Judgment as to the duty to defend, and the duty to indemnify as to the Oxford Place Lawsuit, finding that there is no just reason for delay. This case will be administratively closed until the Bordeaux Lawsuit is resolved. Accordingly, it is

**ORDERED** that the Motion for Entry of Partial Final Judgment (Dkt. 93) is **granted**.

Case No. 8:11-CV-77-T-17TGW

**DONE and ORDERED** in Chambers, in Tampa, Florida on this
20 day of March, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

18